**FILED**

**May 25, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:55 P.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| David Young | ) | Docket No. 2015-06-0860 |
| | ) | |
| v. | ) | |
| | ) | State File No. 39751-2015 |
| Young Electric Co., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua Davis Baker, Judge | ) | |

---
### Affirmed as Modified – May 25, 2016
---

In this interlocutory appeal, the employee alleges that he injured his neck at a job site when he attempted to lift a shopping cart partially filled with construction materials, lost his balance, and fell backward. The employer provided a panel of physicians several weeks after the alleged injury but declined to schedule an appointment, denying the claim instead. Following an expedited hearing, the trial court ordered the employer to provide medical benefits and to pay certain medical expenses already incurred, but denied the employee's claim for temporary disability benefits. Both parties appealed. Having carefully reviewed the record, we affirm the trial court's determination as modified.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Michael Fisher, Nashville, Tennessee, for the employee-appellant/appellee, David Young

Stephen Morton, Nashville, Tennessee, for the employer-appellant/appellee, Young Electric Co.

1

## Factual and Procedural Background

David Young ("Employee") is a forty-year-old resident of Humphreys County, Tennessee. On May 11, 2015, he worked as an apprentice electrician for Young Electric Company, Inc.[1] ("Employer"), which had contracted to perform electrical work for a Kroger store in Nashville undergoing renovations. On the date of the accident, employees were using Kroger shopping carts to transport construction materials to the "Conex" for overnight storage.[2] Employee alleged that during the course of performing this work-related activity, he lifted a shopping cart containing forty to sixty pounds of construction materials off the ground and attempted to move it from the entrance to the Conex. As he did so, he lost his footing, fell back, and the cart fell on top of him, striking his head. A co-worker, Mr. William Harvey, claimed in an affidavit to have witnessed the injury.

Employee testified that he did not immediately experience enough pain to concern him, so he completed his shift without notifying Employer of the incident. Employee stated, however, that early the next morning, at 2:00 or 3:00 a.m., he awoke in "excruciating pain." Later that day, he decided to visit his primary care physician, Dr. Desmond White. On his way to Dr. White's office, Employee alleged that he called his supervisor, John Boatfield, and told him "exactly what happened; that I had been injured at work." Employee claimed that Mr. Boatfield told him to bring a doctor's note when he returned to work. Mr. Boatfield testified on behalf of Employer at the expedited hearing and stated he did not recall this conversation. He further observed that his daily log did not contain any indication that an accident had been reported on the date of the alleged phone call, as would have been proper protocol.

Over the next several days, Employee returned to Dr. White's office on May 15 and May 20. Medical records from the May 12 and May 15 visits contain no evidence that Employee reported suffering a work-related injury. Records from the May 12 visit reveal that Employee was experiencing severe pain in his right shoulder which radiated down his right arm. The report noted "Onset: May 11, 2015," but also stated "Context: there is no injury." Dr. White made similar observations on May 15. Dr. Daniel Shrock, a chiropractor, treated Employee on May 18, 2015. On the "New Patient Application and Information" form, someone crossed out the sections entitled "Insurance" and "Accident Information." Employee wrote on the form that the reason for the visit was a "pinched nerve" with symptoms first appearing on May 12, 2015.

---

[1] The record indicates there is no familial relationship between Employee and Employer.

[2] A Conex is a trailer approximately forty-feet in length. It has double doors, no wheels, and sits about eight inches above the ground.

Employee returned to work, but on May 19 he allegedly aggravated his condition while pulling a wire. Employee did not return to work for Employer after May 19.[3] On May 20, at approximately 6:00 a.m., Employee called Mr. Boatfield to inform him that he would be off work a few days due to his injury. Mr. Boatfield claimed that this phone call on May 20 was the first notice he received of Employee's May 11 injury. After the May 20 phone call, Mr. Boatfield filled out a First Report of Work Injury. A May 20 medical report from Dr. White reflects a change in the description of Employee's condition. Specifically, Employee described the injury as "lifting a cart at work[,] the next day shoulder started hurting, then reaggervated [sic] it yesterday by pulling on wire."

Employer did not provide a panel of physicians following the telephone call between Employee and Mr. Boatfield on May 20, 2015. As a result, Employee continued to seek out medical treatment on his own. After seeing Dr. White in mid-May, he saw Dr. Brook Adams, who performed an MRI and an EMG, which revealed spondylosis, stenosis, a disc protrusion at the C6-7 level of the cervical spine, and cervical radiculopathies. On June 9, Employee consulted Dr. Gregory Lanford, a neurosurgeon, who opined that Employee's work-related accident caused an injury to his cervical spine and recommended surgery.

Eventually, Employer provided a panel of physicians, and on June 27, 2015, Employee chose Dr. N.K. Singh as his authorized physician. However, Employer refused to schedule an appointment and denied the claim on the grounds that the inconsistencies in the medical records called into question whether the alleged accident occurred as reported. Employee filed a Petition for Benefit Determination on October 26, 2015. Following the issuance of a Dispute Certification Notice, Employee filed a Request for an Expedited Hearing seeking temporary disability and medical benefits. After the hearing, the trial court issued an Expedited Hearing Order granting medical benefits but denying temporary disability benefits. Both parties timely appealed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A)    Violate constitutional or statutory provisions;

---

[3] Employee testified he received no income from May 19, 2015, to February 2, 2016, when he began working for Miller Electric.

3

(B)    Exceed the statutory authority of the workers' compensation judge;

(C)    Do not comply with lawful procedure;

(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### *The Physical Facts Rule*

On appeal, Employer argues that Employee's testimony should be disregarded pursuant to the "physical facts rule," which provides that a court may decline to consider testimony that "cannot possibly be true, is inherently unbelievable, or is opposed to natural laws." *State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn. 1993) (citation omitted). Specifically, Employer cites three reasons why Employee's testimony is incompatible with the laws of nature.

Employer's first argument is a conclusory assertion: "it is physically impossible to lift a shopping cart containing 40-60 lbs. to chest level while standing at the rear of the cart." The record indicates that Employee is a forty-year-old former Marine and a regular weight-lifter. Employer offered no evidence that such a person is physically incapable of performing such a feat. Moreover, Employer asks us to apply a rule historically invoked only "sparingly," *Hornsby*, 858 S.W.2d at 895, based on a conclusory statement that, *in Employer's opinion*, Employee could not have been strong enough to lift a shopping cart of unknown weight while positioned at the rear of the cart.[4] This we decline to do.

Second, Employer argues that, even if Employee could lift the shopping cart perpendicularly to his chest, when the child seat collapsed on his hands, the "natural instinct" would be to drop the cart while it was still suspended in the air "in the opposite direction." However, Employer neglects to acknowledge Employee's testimony that he lost control of the cart due to a *combination* of the collapsing of the child seat on his hands *and* tripping over uneven pavement beneath him. In other words, the stumbling over uneven pavement, falling backward, and the collapsing of the child seat occurred simultaneously. Thus, we cannot conclude whether it was "palpably improbable" for

---

[4] Employer did bring a Kroger shopping cart to the expedited hearing as a "demonstrative exhibit," but introduced no objective evidence regarding the size or weight of the cart that allegedly injured Employee, nor did Employer submit evidence of the relative strength of Employee.

4

Employee to hold on to the cart as he was falling backward. *See Nelms v. Tenn. Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 483 (Tenn. Ct. App. 1978).

Similarly, Employer's third argument, that because Employee only raised the cart to chest level, "it would simply defy the laws of gravity for any part of the cart to ever hit the 'top' of Mr. Young's head," also fails. There is no evidence that it violates a "law of nature" for an unwieldy, heavy object to strike a person's head as the person is falling down while grasping the heavy weight at or near chest level.

In sum, "[o]nly when the testimony is inherently improbable and impossible of belief should courts intervene to declare it incredible as a matter of law. When the testimony is capable of different interpretations, the matter should be left for the [fact finder] to decide as the sole arbiter of credibility." *Hornsby*, 858 S.W.2d at 895 (citations omitted). Here, Employee's testimony about the nature of his fall, when considered in its totality, cannot be deemed incredible as a matter of law. Furthermore, the trial judge's findings of fact are presumed correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7). Under these circumstances, we cannot conclude that the evidence preponderates against the determination of the trial court on this issue.

### Impeachment Evidence

Employer next argues that the trial court accorded insufficient weight to its efforts to impeach Employee's credibility in two respects: his prior neck condition and his previous arrest record. In *Harrell v. Travelers Insurance Co.*, No. 02S01-9108-CH 00033, 1992 Tenn. LEXIS 459 (Tenn. June 22, 1992), the Tennessee Supreme Court addressed a similar issue regarding impeachment. The employee in *Harrell* denied any prior injuries and denied working as a carpenter after the work accident. *Id.* at *4. However, evidence indicated the employee had been in a motor vehicle accident several days before the work accident and had been employed intermittently as a carpenter after the work accident. *Id.* Although the trial court reached the conclusion that the employee's testimony had been successfully impeached, the Supreme Court reversed this finding. *Id.* at *6. With respect to the employee's admission that he had been involved in a motor vehicle accident several days before the work accident, the Supreme Court noted that involvement in a motor vehicle accident does not equate to evidence of a prior injury and did not impeach the employee's credibility. *Id.* at *5. Moreover, the employee's denial of current employment as a carpenter was not necessarily inconsistent with the employee's testimony that he did "odds and ends jobs" as a carpenter after the work accident. *Id.* at *5-6. Consequently, the Supreme Court reversed the credibility finding and remanded the case "for further development of the proof." *Id.* at *6.

In the present case, Employee was asked during his deposition whether he ever suffered "neck pain before this to where you've had to seek medical treatment," and

Employee answered "no." He was then asked whether he had any "injuries relative to your neck," and he again answered "no." Employer cited as the basis for impeachment a 2014 altercation in which Employee was "punched in the face" and "knocked out." He was treated at an emergency room and placed in a cervical collar. A CT scan of the neck revealed degenerative changes in the cervical spine but no evidence of a disc herniation or other acute cervical spine injury. Thus, although Employee was diagnosed with neck pain following the altercation, he was not diagnosed with an acute cervical spine injury caused by the altercation. Moreover, there is no evidence that Employee sought medical treatment following the altercation *due to* neck pain, as Employer had asked during Employee's deposition. Therefore, we cannot conclude that Employee's deposition testimony was necessarily inconsistent with his testimony at the expedited hearing.

Further, when confronted with these facts during the expedited hearing, Employee testified that he had forgotten about that incident, but acknowledged that it occurred. Employee then stated that he had removed the cervical collar immediately upon leaving the emergency room, had experienced no residual problems with his neck after the emergency room visit, and had sought no other treatment for neck problems after the emergency room visit. No evidence was introduced at the expedited hearing suggesting that Employee suffered an acute cervical spine injury as a result of the altercation or that he continued to exhibit symptoms or sought additional medical treatment related to his neck. Under these circumstances, we cannot conclude that the evidence preponderates against the trial court's determination on this issue.

With respect to his previous arrest record, Employee readily acknowledged prior arrests during his deposition. The fact that he neglected to identify a third misdemeanor arrest until his cross-examination at the expedited hearing raises a reasonable question regarding Employee's credibility, especially when considering that the third arrest occurred close in time prior to his deposition. When confronted with this omission at the expedited hearing, however, Employee acknowledged it had occurred and testified that he thought he had identified this arrest in his deposition. We cannot conclude that this, standing alone, effectively rendered Employee's testimony regarding the alleged work accident unreliable.

The trial court found that Employee was "self-assured, steady, confident, forthcoming, reasonable and honest" and that his testimony was credible. The law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Thus, although Employee's deposition testimony could be considered incomplete or arguably inconsistent regarding both his previous arrest record and his prior neck pain, we cannot conclude that the trial court erred in finding Employee's testimony at the expedited hearing to be credible and reliable.

6

*Burden of Proof at Expedited Hearing*

Next, Employer argues that Employee failed to meet his burden of proof at the expedited hearing to support the trial court's award of medical benefits. Specifically, Employer cites Tennessee Code Annotated section 50-6-217(a)(3) in support of its argument that Employee failed to come forward with "evidence that is both substantial and material" in support of his claim. Yet, as we have made clear in previous cases, an employee's burden of proof at an expedited hearing is not the same as the burden at a compensation hearing. At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In the present case, Employer presented no evidence to refute Employee's testimony as to how the work accident occurred. Moreover, Employee testified that he informed his supervisor of the accident the following day. The supervisor's testimony that no such conversation occurred because he did not recall it and had not noted it in his daily log was deemed by the trial court to be less persuasive than Employee's testimony. Considering the record as a whole, we cannot conclude the trial court erred in finding Employee was involved in a work-related accident on May 11, 2015, and that he reported the accident to his supervisor the following day.

*Reimbursement of Medical Expenses*

In light of the foregoing, it is necessary to address both Employer's contention that the trial court should not have awarded medical benefits, as well as Employee's contention that the trial court should have ordered payment of more medical expenses. It is well-settled that an employer is legally obligated to provide to an injured employee reasonable and necessary medical treatment that is causally-related to the work accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, such employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable. *See, e.g., GAF Bldg. Materials v. George*, 47 S.W.3d 430, 433 (Tenn. Workers' Comp. Panel 2001); *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 ("[A]n employer who elects to deny a claim runs the

7

risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice . . . .").

In the present case, it was disputed whether Employee informed his supervisor of the accident on May 12, 2015. Moreover, the medical reports of May 12, May 15, and May 18 do not mention any alleged work accident. Yet, both parties admit that Employer became aware of the alleged accident no later than May 20, 2015. It is further undisputed that Employer did not provide a panel on May 20 and, even after giving a panel, declined to authorize an appointment with the selected physician. Thus, we have no difficulty concluding that Employee is entitled to reimbursement of all related medical expenses incurred on or after May 20, 2015, not just those related to Dr. Lanford's evaluation. As to medical expenses associated with Employee's initial three dates of treatment (May 12 and 15 with Dr. White, May 18 with Dr. Schrock), there was insufficient proof at the expedited hearing to establish those visits were causally-related to the work accident. Therefore, the trial court's order is modified to order reimbursement of all causally-related medical expenses incurred on or after May 20, 2015.

*On-going Medical Treatment*

Employee next appeals the decision of the trial court directing Employer to authorize treatment with the physician selected from the panel, Dr. Singh, and instead seeks to compel Employer to authorize continuing treatment with Dr. Lanford. We agree with Employee. "An employer who denies liability for a compensable injury is in no position to insist upon the statutory provisions respecting the choosing of physicians." *GAF Bldg. Materials*, 47 S.W.3d at 433.

In the present case, the trial court expressly held that Employer "waited too long to provide Mr. Young a panel." It is undisputed that Employer became aware of the alleged work accident by at least May 20, 2015. Even assuming Employer took fifteen days to investigate and make a decision on compensability, a panel should have been offered or a denial filed no later than June 4.[5] *See* Tenn. Comp. R. & Regs. 0800-02-14-.04(7) (1999). The Choice of Physician form was not signed until June 27, by which time Employee had sought treatment on his own, having seen Dr. Lanford on June 9. Therefore, we conclude Employee justifiably sought treatment on his own and is entitled to continue treating with Dr. Lanford as his authorized physician. The order of the trial court is modified accordingly.

*Temporary Disability Benefits*

Finally, Employee challenges the trial court's denial of temporary disability benefits. Employee alleges he was unable to work from May 20, 2015, through February

---

[5] The record is silent as to the date Employer denied the claim or the date it provided Employee the panel.

2, 2016, and, thus, is entitled to temporary disability benefits. To receive temporary total disability benefits, an employee must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Where the disability is not total, an employee may recover temporary partial disability benefits if the employee "is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005); *see* Tenn. Code Ann. § 50-6-207(2) (2015). Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits if the employee is able to work without loss of income. *See Long v. Mid-Tenn. Ford Truck Sales*, 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire and Rubber Co.*, 655 S.W.2d 931, 933 (Tenn. 1983).

Here, Employee has not presented sufficient medical proof to establish that he was unable to work as a result of his injury, having come forward with no restrictions issued by a physician addressing his ability to work. When asked at the expedited hearing whether Employer would have been able to accommodate any restrictions, Mr. Boatfield indicated that he was not sure what type of work could have been provided in light of the nature of the employment. However, Employee provided no actual restrictions for Mr. Boatfield to review and presented no proof to establish that any physician assigned work restrictions or opined Employee was unable to work during the relevant period of time. Therefore, we affirm the trial court's denial of temporary disability benefits at this time.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision to order medical benefits at this interlocutory stage of the case. To the extent that the trial court's order limited reimbursable medical expenses to those of Dr. Lanford, and required Employee to obtain additional treatment with Dr. Singh, we modify the order to require payment or reimbursement of all causally-related medical expenses on or after May 20, 2015, and order Employer to authorize Dr. Lanford for any additional reasonable and necessary medical treatment causally-related to the work accident. Lastly, we affirm the trial court's denial of temporary disability benefits. The case is remanded for any further proceedings that may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

9



**FILED**

**May 25, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:55 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| David Young | ) | Docket No.  2015-06-0860 |
| | ) | |
| v. | ) | |
| | ) | State File No.  39751-2015 |
| Young Electric Co.,, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 25th day of May, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Michael Fisher | | | | | X | mfisher@ddzlaw.com |
| Stephen Morton | | | | | X | Stephen.morton@mgclaw.com |
| Joshua David Baker, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

_Matthew Salyer_

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov